<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

KERLINE JEAN-FRANCOIS,

          Plaintiff,

          v.

UNITED AIRLINES, INC.,

          Defendant.

Case No. 2:25-cv-12342 (BRM) (CF)

**OPINION**

---

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant United Airlines, Inc.'s (incorrectly named as "United Airlines") ("United") Motion to Dismiss ("Motion") (ECF No. 24) *pro se* Plaintiff Kerline Jean-Francois's ("Jean-Francois") Amended Complaint (ECF No. 20) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jean-Francois filed an Opposition (ECF No. 27), and United filed a Reply (ECF No. 28). This Court has jurisdiction pursuant to §§ 1331 and 1332. Having reviewed and considered the parties' submissions filed in connection with the motion and having declined to hold oral argument pursuant to Rule 78(b), for the reasons set forth below and for good cause shown, United's Motion to Dismiss is **GRANTED**.

    I.    **BACKGROUND**

    A.    **Factual Background**

For the purpose of this Motion, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to the *pro se* plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*

*Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

On July 12, 2024, Jean-Francois was a passenger on United flight 1423 originating from Newark International Airport in Newark, New Jersey, traveling to Atlanta, Georgia. (ECF No. 20 at 4.) She has a disability which results in limited mobility and includes arthritis in her hands and knees. (*See id.*) After arriving at her gate, she alleges she stood up and walked to the sole United agent at the gate desk and requested wheelchair assistance boarding the airplane.[1] (*See id.*) She was asked "to go back and take a seat," where she waited for over thirty minutes without assistance. (*See id.*) She was then "obliged to stand in line because it was almost the end of boarding" and "it would not be possible for [her] to get in a wheelchair even if it were available." (*See id.*) Jean-Francois ultimately walked onto the plane without wheelchair assistance. (*See id.*) She alleges she suffered muscle strain, fatigue, pressure sores, muscle cramps, and joint, knee, neck and back pain, as well as physical and emotional distress. (*Id.* at 13.)

Jean-Francois filed a complaint with United when she arrived home on July 16, 2024. (*See generally id.*) She also filed a complaint with the United States Department of Transportation ("DOT"), which issued an investigative summary report on April 29, 2025, finding United had violated the law when it failed to provide Jean-Francois with assistance to board her flight. (*Id.* at 24, Ex. P1.)

---

[1] Jean-Francois alleges she required wheelchair assistance from the terminal lobby to the gate. (ECF No. 20 at 4.) While the Amended Complaint is unclear as to whether Jean-Francois received such assistance, a review of the Amended Complaint and accompanying exhibits reveals that her complaint is based on and limited to lack of assistance from the gate to the plane. (*Id.* at 10 ("My complaint was never about failure to provide wheelchair assistance from the terminal to the gate . . . ."); *id.* at 30, Ex. P3 ("[T]he complaint is that I did not get assistance from the gate, not from the lobby.").) The Court therefore construes the Amended Complaint to allege United failed only to provide wheelchair services from the gate to the airplane, and does not allege United failed to provide such services from the terminal to the gate.

### B.    Procedural History

On May 29, 2025, Jean-Francois initially filed her Complaint in the Superior Court of New Jersey, Essex County, Law Division, Civil Part, entitled *Kerline Jean-Francois v. United Airlines*, Docket No. ESX-L-4144-25. (Not. of Rem. (ECF No. 1) ¶ 1.) United removed this action to federal court pursuant to 28 U.S.C. §§ 1331 and 1332 on June 30, 2025. (*Id.* ¶¶ 3–5.) Jean-Francois filed the Amended Complaint, with this Court's permission, on November 13, 2025. (ECF No. 20.)

On December 18, 2025, United filed its Motion to Dismiss the Amended Complaint. (ECF No. 24-1.) Jean-Francois filed a timely, though uniquely formatted, Opposition on January 6, 2026. (ECF No. 27.) United filed its Reply on February 5, 2026. (ECF No. 28.)

Jean-Francois's Amended Complaint appears to contend United violated her rights under: the Air Carrier Access Act ("ACAA") requiring United to "provide assistance to individuals with mobility impairments" (ECF No. 20 at 8); Title III of the Americans with Disabilities Act ("ADA") for "discrimination in various areas" (*id.* at 6); Section 504 of the Rehabilitation Act ("Section 504") for being "denied access or reasonable accommodations" (*see generally id.*); the Fourteenth Amendment to the U.S. Constitution (*id.* at 17): and the Civil Rights Act of 1964 ("CRA") (*id.* at 18). Jean-Francois also appears to allege claims for breach of contract because the "terms of service were not met" (*id.* at 12); breach of good faith alleged as "bad faith" (*id.* at 6); negligence "requir[ing] proving that the airline had a duty to provide assistance and failed to do so, resulting in damage" (*id.* at 17); and emotional distress against United because "[a]irlines are legally obligated to provide adequate services to passengers with disabilities," the lack of which can "lead[] to significant psychological harm," of which Jean-Francois claims to have "medical

3

documentation as evidence" (*id.* at 16).[2] She also seeks injunctive relief requiring United to conform their customer relations to "act or refrain from acting in a specific way, like creating stories to blame plaintiff[s] and to avoid accountability . . . [and] to implement changes in their wheelchair assistance policies or training to prevent future incidents." (*Id.* at 16.)

## II.  LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

---

[2] Jean-Francois references relief under New Jersey's Law Against Discrimination "("NJLAD") in her Opposition, but that claim is not present in her Amended Complaint. (ECF No. 27 at 16.) Because the Court is dismissing the federal claims and declining to exercise supplemental jurisdiction over the state claims, the Court will not analyze whether Jean-Francois set forth a sufficient factual predicate to put United on notice of said NJLAD claim. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (explaining courts generally decline to exercise supplemental jurisdiction over state claims). Jean-Francois is effectively seeking to amend the Amended Complaint with her opposition brief, but an attempt to clarify allegations in an opposition to a motion to dismiss is improper. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

4

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme

5

Court's ruling in *Iqbal* emphasizes a plaintiff must show the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the Court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### III.    DECISION

United moves to dismiss the Amended Complaint in its entirety, arguing Jean-Francois fails to state any claim for relief. (ECF No. 24-1.) Given Jean-Francois is proceeding *pro se*, the Court attempts to glean her factual allegations and legal claims through liberal construction of her pleading. *Alexander v. Gennarini*, 144 F. App'x 924, 926 (3d Cir. 2005); *Cooke v. Experian Info. Sols., Inc.*, Civ. A. No. 22-5375, 2024 WL 1142214, at *2 (D.N.J. Mar. 15, 2024) ("When considering a motion to dismiss the complaint of a *pro se* litigant, courts must bear in mind that such pleadings are held to less stringent standards than more formal pleadings drafted by lawyers."); *Huff v. Atl. Cnty. Just. Facility*, Civ. A. No. 20-9761, 2021 WL 307303, at *2 (D.N.J. Jan. 29, 2021) ("Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may

6

be making."). The Court addresses her ACAA claim, Title III ADA claim, Section 504 claim, Fourteenth Amendment claim, Civil Rights Act of 1964 claim, and state law claims in turn.

### A.    Air Carrier Access Act Claim

United argues Jean-Francois's ACAA claim is subject to dismissal because the ACAA does not provide a private right of action. (ECF No. 24-1 at 7–8.) Jean-Francois responds "[t]he claim is recognized by ACAA" and "the case must move forward because the laws support the claim." (ECF No. 27 at 21; *see also id.* at 27 (claiming United has a "duty" or "obligation arising from ACAA").)

The ACAA prohibits air carriers from discriminating against "an otherwise qualified individual" because "the individual has a physical or mental impairment that substantially limits one or more major life activities." 49 U.S.C. § 41705(a)(1). The Third Circuit has not directly opined on the issue of a private right of action under the ACAA. *Elassaad v. Indep. Air, Inc.*, 613 F.3d 119, 132 n.18 (3d Cir. 2010) (footnoting "it is not clear whether [the private plaintiff] would have a right of action under the ACAA" . . . "[h]owever, we need not resolve this issue today"). After the Supreme Court's decision in *Alexander v. Sandoval* narrowed the scope of implied private causes of action originating from statute, each of the five circuits to address the issue has held that, while the ACAA authorizes administrative enforcement, there is no private right of action under the statute. *See Alexander v. Sandoval*, 532 U.S. 275, 293 (2001); *Lopez v. Jet Blue Airways*, 662 F.3d 593, 597 (2d Cir. 2011) ("[T]he text and structure of the ACAA manifests no congressional intent to create a private right of action in a federal district court."); *Stokes v. Sw. Airlines*, 887 F.3d 199, 205 (5th Cir. 2018) (holding the ACAA "is enforceable only by the agency charged with administering it"); *Segalman v. Sw. Airlines Co.*, 895 F.3d 1219, 1225 (9th Cir. 2018) ("Congress did not intend to create an implied private cause of action to remedy violations of the

ACAA."); *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1271 (10th Cir. 2004) ("[T]he ACAA does not establish a private right of action."); *Love v. Delta Air Lines*, 310 F.3d 1347, 1360 (11th Cir. 2002) ("[O]ur review of the text and structure of the ACAA yields no congressional intent to create a private cause of action in a federal district court."). Lower courts have consistently held the same post-*Sandoval*. *See, e.g.*, *Chipps v. Cont'l Airlines, Inc.*, Civ. A. No. 05-2024, 2006 WL 463160, \*5 (M.D. Pa. Feb. 24, 2006) ("[T]he ACAA contains a comprehensive enforcement scheme which precludes a finding of a private right of action.").

The Court considers persuasive the decisions of several courts that have held there is no private right of action under the ACAA. *See e.g. Chipps*, 2006 WL 463160 at \*5; *Lopez*, 662 F.3d at 597. Here, the Amended Complaint alleges United did not provide wheelchair access to Jean-Francois from her flight's gate to the plane. (ECF No. 20 at 4.) As a claim for a form of disability discrimination, Jean-Francois's claim is, therefore, not authorized under the ACAA. Jean-Francois's citation to the DOT's investigative report finding a violation occurred is misplaced. Indeed, the investigative report states "[i]f [the DOT] decide[s] to seek enforcement action against the airline with respect to this issue, this complaint would be among those considered." (ECF No. 20 at 24.) Unlike agencies seeking to enforce administrative remedies, Jean-Francois lacks a legal basis to pursue a private cause under the ACAA.

Accordingly, Jean-Francois fails to state a claim pursuant to Rule 12(b)(6) and United's Motion to Dismiss her ACAA claim is **GRANTED.**

### B.      Title III of the Americans with Disabilities Act Claim

United contends the ADA Title III claim should be dismissed because the ADA does not regulate air travel. (ECF No. 24-1 at 10.) Jean-Francois responds "the carrier has a duty and an

obligation to help [her] under . . . ADA" and her "claim is not preempted and barred outright by the ADA." (ECF No. 27 at 16, 27–28.)

The Court construes Jean-Francois's Amended Complaint as asserting a claim under Title III of the ADA for disability discrimination in a "place of public accommodation." (ECF No. 20 at 6 (citing 42 U.S.C. § 12182.)) Title III prohibits "any person who owns, leases . . . , or operates a place of public accommodation" from discriminating on the basis of a disability in "any place of public accommodation." 42 U.S.C. § 12182(a). The statute enumerates several categories of "private entities" which "are considered public accommodations," only one of which is arguably applicable, "a terminal, depot, or other station used for specified public transportation." *Id.* § 12181(7)(G). Critically, the terms such as "terminal" and "depot," which are "considered public accommodations" in § 12181(7)(G), are defined by another provision as "transportation by bus, rail, or any other conveyance (*other than by aircraft*)." *Id.* § 12181(10) (emphasis added). The Second Circuit has affirmed the dismissal of such a claim under Title III in similar circumstances where the plaintiff alleged she suffered from a pain condition requiring her use of a wheelchair, but her airline failed to timely provide her said wheelchair between the gate and boarding the plane, causing her physical pain in the form of swelling in her foot and mental pain in the form of anxiety and nightmares. *Lopez*, 662 F.3d at 597–99 (dismissing ADA claim for failure to state a claim "because the alleged discrimination occurred at a facility used primarily for air transportation, and Title III does not contemplate a claim against an air carrier under those circumstances"). Plaintiffs also may not obtain monetary damages under this provision and therefore only prospective

injunctive relief is available. *Access 4 All, Inc. v. Absecon Hospitality Corp.*, Civ. A. No. 04–6060, 2006 WL 3109966, at *5 (D.N.J. Oct. 30, 2006).

Here, the Amended Complaint sets forth piecemeal factual allegations, which the Court construes as allegations of discrimination for failure to provide Jean-Francois with a wheelchair between the gate and the plane. (ECF No. 20 at 4.) Title III of the ADA, however, expressly does not extend to claims arising in connection with transportation by aircraft. 42 U.S.C. § 12181(10). In *Lopez*, the plaintiff alleged she suffered from a pain condition, requested the use of a wheelchair between the gate and the plane, did not timely receive wheelchair assistance, and suffered physical pain and swelling and mental discomfort. *See Lopez*, 662 F.3d at 597–99. The court found the plaintiff could not survive a motion to dismiss because, although the ADA does provide a private right of action unlike the ACAA, the ADA does not apply to an airline's failure to provide wheelchair assistance from the gate to the plane. *Id.* at 599. Here, Jean-Francois alleges a similar set of facts,[3] namely that she suffers from arthritis in her hands and knees with limited mobility, she requested wheelchair assistance from the gate to the plane, she did not receive said assistance and walked onto the plane herself, and suffered various body pains and emotional distress. (ECF No. 20 at 4, 13.) This is exactly the type of claim arising in connection with transportation by aircraft, which is not permitted under Title III of the ADA. Because Jean-Francois cannot pursue her private claim under the ADA, she cannot receive injunctive relief under that statute either.

---

[3] Jean-Francois focuses much of her opposition on the definition of "voluntary," particularly disputing she could not have voluntarily walked onto the plane without United's sole agent on duty scanning her boarding pass and allowing her to enter. (*See, e.g.*, ECF No. 27 at 7.) The Court notes this as a semantic argument, as United's Motion asserts she chose to stand and chose to walk at specific moments in time rather than to wait further. (ECF No. 28 at 5 n.2.) It is immaterial that the gate agent needed to scan Jean-Francois's boarding pass in order for her to board the plane for purposes of this Motion to Dismiss.

Accordingly, United's Motion to Dismiss the Title III ADA claim[4] is **GRANTED**.

## C.      Section 504 Claim

United argues the Section 504 claim is not sustainable as a matter of law because the provision does not apply to commercial airlines. (ECF No. 24-1 at 11–12.) An intensive review of Jean-Francois's Opposition does not reveal any response on the subject of the Section 504 claim. (*See generally* ECF No. 27.)

Section 504 provides "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To assess whether Section 504 liability may attach, the defendant must receive federal financial assistance for the program or activity in question. *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 n.3 (3d Cir. 2008). According to a senate report relied upon by the Eighth and Ninth Circuits, "Congress enacted the ACAA in response to the Supreme Court's decision in *United States Department of Transportation v. Paralyzed Veterans of*

---

[4] The Court has construed Jean-Francois's petition for injunctive relief mandating United to "act or refrain from acting in a specific way, like creating stories to blame plaintiff[s] and to avoid accountability . . . [and] to implement changes in their wheelchair assistance policies or training to prevent future incidents" (*id.* at 16) as related to her ADA claim, because it is the only type of relief available to a private plaintiff under the statute. Even if this Court were to consider her petition an independent claim for a permanent injunction pursuant to no statutory authority, the result would be the same. A plaintiff seeking a permanent injunction must demonstrate: (1) an irreparable injury; (2) an inadequate remedy at law; (3) the balance of hardships between the plaintiff and defendant warrants a remedy in equity; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006). The first two factors are threshold issues which the moving party must met. *E.g.*, *Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017), *as amended* (June 26, 2017). Jean-Francois has alleged she suffered muscle strain, fatigue, pressure sores, muscle cramps, and joint, knee, neck and back pain, as well as physical and emotional distress, none of which plausibly can constitute irreparable injury. (ECF No. 20 at 13.) She is seeking monetary damages and has not alleged she has no other remedy at law. (*See generally id.*) Therefore, dismissal is appropriate under either pleading theory.

11

*America*," which held "[S]ection 504 of the Rehabilitation Act of 1973 applies only to those commercial airlines that receive direct federal subsidies." *Segalman*, 895 F.3d at 1223 (referencing *Tallarico v. Trans World Airlines, Inc.*, 881 F.2d 566 (8th Cir. 1989); S. Rep. No. 99-400, at 1–2 (1986)); *see also Montanez v. Price*, 154 F.4th 127, 145 (3d Cir. 2025) (discussing who can be sued under Section 504 and finding "federal financial assistance" included "federal grants, loans, non-procurement contracts, and 'reimbursement through Medicare and Medicaid'" and the private defendants were not plausibly alleged to have received federal financial assistance and so could not be sued).

Here, the Amended Complaint does not allege United receives federal financial assistance. (*See generally* ECF No. 20.) Even if United receives federal funds, there is no allegation those funds do not fall into the exception recognized by the Supreme Court in *Paralyzed Veterans of America* for airlines receiving direct federal subsidies. (*See generally id.*) Jean-Francois cannot state a claim against United for failure to provide wheelchair access at her gate under Section 504 of the Rehabilitation Act.

Accordingly, United's Motion to Dismiss the Section 504 claim is **GRANTED**.

### D.    Fourteenth Amendment Claim

United argues the Fourteenth Amendment claim fails because United is not a state actor. (ECF No. 24-1 at 13.) A review of Jean-Francois's Opposition does not reveal any response relating to her Fourteenth Amendment claim. (*See generally* ECF No. 20.)

A private entity may qualify as a state actor only when it exercises "powers traditionally exclusively reserved to the State," though the Supreme Court has stressed that very few functions fall into this category, such as running elections or operating a company town. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 810 (2019) (citing *Jackson v. Metro. Edison Co.*, 419 U.S.

345, 352 (1974)). Even if a private entity is federally funded and subject to extensive state regulation, it does not automatically become a state actor for purposes of the Fourteenth Amendment. *See*, *e.g.*, *Jackson*, 419 U.S. at 350; *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (holding the operative question is whether the challenged action is fairly attributable to the state). Courts in other districts have applied this rule to airlines specifically. *See Anderson v. USAir, Inc.*, 812 F.2d 49, 56 (D.C. Cir. 1987) ("USAir is not transformed into a government actor by regulation."); *Abadi v. Am. Airlines, Inc.*, Civ. A. No. 23-4033, 2024 WL 1346437, at *22 (S.D.N.Y. Mar. 29, 2024) (holding American Airlines was not a state actor in connection with plaintiffs suing on the denial of their right to travel based upon disability).

Here, a review of the Amended Complaint does not reveal any allegations which could be construed as the basic factual predicates necessary to allege United is a state actor. (*See generally* ECF No. 20.) United is undoubtedly subject to extensive state regulation and may or may not receive funds from the state, but, similar to failed suits against American Airlines and USAir on the same theory, an airline is not a state actor automatically without specific allegations to the contrary. Jean-Francois alleges none. (*See generally id.*)

Accordingly, United's Motion to Dismiss the Fourteenth Amendment claim is **GRANTED.**

### E.    Civil Rights Act of 1964 Claim

United argues the Civil Rights Act of 1964 claim should be dismissed because the CRA does not cover disability-based discrimination. (ECF No. 24-1 at 14–15.) Jean-Francois contends the DOT already decided that United violated her civil rights. (ECF No. 27 at 20.)

The Civil Rights Act of 1964 proscribes discrimination "on the basis of race, color, sex, religion, or national origin." 42 U.S.C. § 2000e–2. Federal courts uniformly hold the Civil Rights

13

Act of 1964 does not prohibit discrimination on the basis of disability. *Omogbehin v. Cino*, 485 F. App'x 606, 609 (3d Cir. 2012) ("Title VII does not prohibit disability discrimination and related retaliation."); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) ("Title VII does not proscribe discrimination on the basis of disability."); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093, n.8 (9th Cir. 2008) ("Title VII does not encompass discrimination on the basis of disability."); *Risco v. McHugh*, 868 F. Supp. 2d 75, 107 (S.D.N.Y. 2012) ("Title VII does not prohibit discrimination on the basis of disability.").

Here, Jean-Francois attempts to allege disability discrimination in her Amended Complaint for the failure to provide her with a wheelchair in connection with her disability which causes her pain and results in limited mobility. (ECF No. 20 at 4–5.) The Court does not glean any allegations which can be construed as claims of discrimination on the basis of race, color, sex, religion, or national origin. (*See generally id.*) Jean-Francois, therefore, fails to state a claim for discrimination under the Civil Rights Act of 1964.

Accordingly, United's Motion to Dismiss the Civil Rights Act claim is **GRANTED**.

**F.    State Law Claims**

United contends Jean-Francois's state law claims are preempted and barred by the Federal Airline Deregulation Act ("FADA"). [5] (ECF No. 24-1 at 15, 22–23.) Because this Court finds Jean-

---

[5] If the Court were to find the claims were not preempted by FADA, as a court sitting in diversity jurisdiction, the Court would normally conduct a choice-of-law analysis to determine which state's law applies; however, all parties briefed all claims applying New Jersey law to the events that occurred at Newark Airport and did not raise another state's law as applicable. (*See generally* ECF Nos. 24-1, 27). Accordingly, the Court will apply New Jersey law, notwithstanding United's assertion of federal preemption. *See UBI Telecom Inc. v. KDDI Am., Inc.*, Civ. A. No. 13-1643, 2014 WL 2965705, at *9 (D.N.J. June 30, 2014) (holding "[w]hen the parties agree upon which state's law applies . . . the Court need not conduct [a] choice-of-law inquiry"); *Butera v. Honeywell*, Civ. A. No. 18-13417, 2020 WL 64568, at *2 (D.N.J. Jan. 6, 2020); *Cole v. NIBCO, Inc.*, Civ. A. No. 13-7871, 2015 WL 2414740, at *5 (D.N.J. May 20, 2015); *Stratis v. BMW of N. Am., LLC*, No. 2:22-CV-6929 (BRM) (JRA), 2023 WL 3092188, at *6 (D.N.J. Apr. 26, 2023).

14

Francois has not properly pled the underlying elements of any of those claims, *see infra* Section III.F.1-3, it will not reach United's preemption argument. [6]

### 1. Breach of Contract and Breach of Good Faith Claims

United argues Jean-Francois fails to plead the specific elements of a contract, identify any contractual provisions obligating United to provide wheelchair assistance as a term of her ticket purchase, or allege any exchange of consideration for wheelchair service. (ECF. No. 24-1 at 15.) Jean-Francois responds there was a valid contract with a specific contractual obligation breached by United, to provide wheelchair assistance, which resulted in damages, emotional distress, and pain and suffering. (ECF No. 27 at 29.)

To plead a cause of action for a breach of contract, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). "A plaintiff must state facts that allow for the plausible inference that a contract exists and that provisions in that contract were violated." *Abira Med. Lab'ys, LLC v. Nat'l Ass'n of Letter Carriers Health Ben. Plan*, Civ. A. No. 23-5142, 2024 WL 2746101, at *3 (D.N.J. May 29, 2024); *Sequiera v. JP Morgan Chase Bank, N.A.*, Civ. A. No. 16-5278, 2019 2019 WL 1434969, at *3 (D.N.J. Mar. 29, 2019) ("To establish a claim for breach of contract, the

---

[6] For example, the Supreme Court held FADA "permits state-law-based court adjudication of routine breach-of-contract claims." *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 232 (1995) (reasoning FADA "stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated"). It further mandated courts are confined, "in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233. Because this Court finds Jean-Francois has failed to allege the elements of a contract for wheelchair services, it will not reach the issue of whether those allegations would amount to services under FADA which would preempt a breach of contract claim.

plaintiff must demonstrate the existence of a contract by showing offer, acceptance, consideration, and mutual assent."). To plead the existence of a contract, a plaintiff must allege "(1) a meeting of the minds; (2) an offer and acceptance; (3) consideration; and (4) reasonably certain contract terms." *Gant v. Ragone*, Civ. A. No. 20-1727, 2020 WL 6797125, at *2 (D.N.J. Nov. 19, 2020).

A claim for breach of the implied covenant of good faith and fair dealing[7] requires a plaintiff to prove "(1) a contract exists between the parties; (2) the plaintiff performed under the terms of the contract; (3) the defendant acted in bad faith with the purpose of depriving the plaintiff of rights or benefits under the contract; and (4) the defendant's actions caused the plaintiff to sustain damages." *Id.* The implied covenant of good faith and good dealing is present in every contract and means "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sons of Thunder v. Borden, Inc.*, 690 A.2d 575, 586 (N.J. 1997).

The Amended Complaint fails to allege the essential elements of any contract for wheelchair services, or the essential terms thereof. (*See generally* ECF No. 20.) Jean-Francois begins her recitation of events at the time of her "reservations for a round trip with United." (*Id.* at 4.) The purchase of tickets, to which this presumably refers, constitutes an offer, acceptance, and the exchange of consideration in the form of currency for service. Jean-Francois did not attach the terms and agreement of the purchase of those tickets nor identify any explicit provision in the

---

[7] The Court recognizes the only reference to breaching the duty of good faith and fair dealing in the Amended Complaint is a repeated assertion of "bad faith." (ECF No. 20 at 6, 17.) The Court has construed the reference as an independent count requesting relief, however, United did not address the duty of good faith and fair dealing in its Motion to Dismiss. (*See generally* ECF No. 24-1.) Because a breach of the duty of good faith and fair dealing requires allegations of an existing contract and the Court finds Jean-Francois has not alleged a contract existed for wheelchair services, the Court is also dismissing the claim for breach of the duty regardless of United's interpretation of the Amended Complaint.

contract for the purchase of those tickets entitling her to wheelchair services. (*See generally id.*) Jean-Francois instead only offers what appears to be an email confirmation from United confirming her wheelchair request. (ECF No. 20 at 26.) That alone is insufficient to allege a contractual agreement existed for United to provide wheelchair services to Jean-Francois, what the terms of the agreement were, nor how those terms were violated. There is also no allegation Jean-Francois paid any consideration for her request for wheelchair services, which is a requirement of a valid contract constituting the basis for a claim of breach of contract.

Jean-Francois's "bad faith" claim fails on the same grounds, as she has not alleged the existence of a valid contract for wheelchair services. Without the allegation of a valid contract between the parties, Jean-Francois cannot sustain a claim for breach of the duty of good faith and fair dealing implied in every contract as a matter of law.

Accordingly, United's Motion to Dismiss the breach of contract and breach of good faith claims is **GRANTED**.

### 2. Negligence Claim

United argues Jean-Francois cannot allege breach of any duty as a matter of law because she chose to engage in self-help and board the plane under her own power instead of waiting for wheelchair assistance as she was instructed by the gate agent. (ECF No. 24-1 at 24.) Jean-Francois asserts she could never "voluntarily" board the plane because the gate agent must scan a passenger's ticket and allow them to board. (ECF No. 27 at 5.) United, by way of Reply, included the full grievance[8] Jean-Francois submitted to United, which she alleges she submitted in her

---

[8] Both parties refer to the initial communication Jean-Francois submitted to United regarding her experience as her initial "complaint," however, for the sake of clarity, the Court will refer to said document as her grievance.

Amended Complaint and relies upon in explaining her correspondence with United and the DOT regarding the substance of said grievance. (ECF No. 28-1, Ex. A; ECF No. 20 at 4–5, Ex. P1–3.)

"In order to sustain a common law cause of action in negligence, a plaintiff must prove four core elements: '(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages.'" *Polzo v. Cty. of Essex*, 960 A.2d 375, 384 (N.J. 2008) (quoting *Weinberg v. Dinger*, 524 A.2d 366, 378 (N.J. 1987)). "[I]n order to state a claim on which relief can be granted, a plaintiff must plead facts sufficient to suggest the required elements of the claim." *Adegbuji v. Green*, 280 F. App'x 144, 148 (3d Cir. 2008) (referencing *Philips*, 515 F.3d at 234). *See also Lockhart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 738 (D.N.J. 2015) (holding plaintiff plausibly pled breach of duty of care under a negligence theory when she alleged a high school teacher left a disabled minor unsupervised with other students after a two-year pattern of sexual misconduct levied against said minor by other students).

Jean-Francois fails to sufficiently allege United breached a duty. United admits it had a duty of reasonable care as a carrier to Jean-Francois, however, the facts included in the Amended Complaint construed in her favor simply do not allege United breached this duty. Jean-Francois alleges she arrived at her gate, walked to the sole gate agent, requested wheelchair assistance and received instructions to wait. (ECF No. 20 at 4). She further alleges she waited until almost the end of boarding and, upon not receiving assistance, chose to stand and queue in the boarding line, wherein the gate agent scanned her boarding pass and allowed her to walk onto the plane.[9] (*See*

---

[9] The Court is permitted to review documents relied upon in the Amended Complaint, such as the original grievance Jean-Francois filed with United. *In re Burlington Coat Factory*, 114 F.3d at 1426. "[A] plaintiff can plead [her]self out of court by alleging facts which show [s]he has no claim, even though [s]he was not required to allege those facts . . . . Allegations in a complaint are binding admissions . . . and admissions can of course admit the admitter to the exit from the federal courthouse." *Gutierez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (quoting *Jackson v. Marion Cnty.*, 66 F.3d 151, 153 (7th Cir. 1995)). Here, Jean-Francois ostensibly pleads herself out of court

18

*id.*) She did not allege she informed the United agent she could not remain standing. (*See generally id.*) She did not allege United's agent actually refused to provide her wheelchair assistance. (*See generally id.*) She instead admits to engaging in self-help and walking onto the plane herself out of a concern boarding would end. (*See id.*) She has not alleged United closed boarding without providing her a wheelchair; rather, she foreclosed United's ability to provide her a wheelchair. She has not plausibly pled United breached a duty to her given the facts she has alleged. *See Twombly*, 550 U.S. at 556.

Accordingly, United's Motion to Dismiss the negligence claim is **GRANTED**.

### 3.  Emotional Distress Claim

United submits, in addition to being preempted by FADA, the emotional distress claim must be dismissed because Jean-Francois does not allege conduct which is so outrageous and extreme as to go beyond the bounds of decency, nor any physical impact or reasonable fear of immediate physical harm. (ECF No. 24-1 at 22.) Jean-Francois contends her allegations of emotional distress, including "[f]eelings of frustration and helplessness due to lack of support," "[a]nxiety about traveling and navigating the airport environment," and "embarrassment and shame," are plausibly pled. (ECF No. 20 at 15; ECF No. 27 at 5.)

---

by referencing her initial grievance she submitted to United. (ECF No. 28-1, Ex. A.) Her initial grievance indicates she "explained to the UA agent that [she] needed help and . . . [the gate agent] told [her] to stand by the desk." (*Id.*) The gate agent then "came back and forth getting [two] passengers [and] [s]he put them in the aircraft and came back to help [Plaintiff]." (*Id.*) Jean-Francois "asked her why she left [her] for so long[sic] standing?" (*Id.*) When the gate agent said she could provide assistance now, Jean-Francois "told her that it was too late." (*Id.*) Said grievance further indicates she was the seventh person to board the plane and spoke to the gate agent while standing on her own at the beginning of boarding the disabled passengers, who are boarded first. (*Id.*) These statements, included in the grievance relied upon by Jean-Francois in her Amended Complaint, further render Jean-Francois's allegations untenable.

Under New Jersey law, to make out a *prima facie* case of intentional infliction of emotional distress, a plaintiff must show: (1) the defendant acted intentionally; (2) the defendant's conduct was so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community; (3) the conduct proximately caused the plaintiff emotional distress; and (4) the emotional distress was so severe that no reasonable person could be expected to endure it. *Segal v. Lynch*, 993 A.2d 1229, 1239 (N.J. Super. Ct. App. Div. 2010). The "severe emotional distress" contemplated by the fourth element "must be sufficiently substantial to result in either physical illness or serious psychological sequelae." *Turner v. Wong*, 832 A.2d 340, 348 (N.J. Super. Ct. App. Div. 2003). Mere allegations of . . . embarrassment" are insufficient as a matter of law. *Id.* (internal citations omitted).

Negligent infliction of emotional distress is "understood as negligent conduct that is the proximate cause of emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care." *Decker v. Princeton Packet, Inc.*, 561 A.2d 1122, 1128 (N.J. 1989). To succeed, Plaintiff must prove the following: (1) "a duty of reasonable care" was owed by the defendant to the plaintiff, (2) said duty was breached, (3) the "plaintiff suffered severe emotional distress," and (4) the breach proximately caused Plaintiff's injury. *Russo v. Nagel*, 817 A.2d 426, 435 (N.J. Super. Ct. App. Div. 2003). "[T]he emotional distress suffered by plaintiff must be so severe that no reasonable [person] could be expected to endure it." *Ingraham v. Ortho-McNeil Pharm.*, 25 A.3d 1191 (N.J. Super Ct. App. Div. 2011).

Here, the Amended Complaint fails to plead sufficient facts to plausibly demonstrate Jean-Francois suffered severe emotional distress to raise an IIED or NIED claim. For example, nothing she alleges in the Amended Complaint would permit the Court to reasonably infer she suffered emotional distress amounting to physical illness or serious psychological sequelae. *See Turner*,

832 A.2d at 348. Although the Amended Complaint alleges Jean-Francois suffered physical discomfort in the form of muscle strain, joint paint, fatigue, swelling, and pressure sores, regarding mental injury Jean-Francois alleges only that United's failure to provide wheelchair assistance from the gate to the plane caused her "feelings of frustration and helplessness," "anxiety about traveling," "a sense of diminished autonomy," "social isolation," and "embarrassment and shame." (ECF No. 20 at 12–14.) These allegations are insufficient as a matter of law to show severe emotional distress.

Accordingly, United's Motion to Dismiss the emotional distress claim is **GRANTED**.

## IV.    CONCLUSION

For the reasons set forth above, United's Motion to Dismiss (ECF No. 24) the Amended Complaint pursuant to Rule 12(b)(6) is **GRANTED**, and the Amended Complaint (ECF No. 20) is **DISMISSED WITHOUT PREJUDICE**. The Court permits Jean-Francois to file a Second Amended Complaint within thirty (30) days. Failure to file a Second Amended Complaint will automatically result in dismissal with prejudice. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: April 8, 2026

21